# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

FIDELIS I. OMEGBU,

    **Plaintiff,**

v.              Case No.  05-C-596

STATE OF WISCONSIN ELECTIONS BOARD,
MILWAUKEE COUNTY, MILWAUKEE COUNTY
DISTRICT ATTORNEY'S OFFICE, MILWAUKEE
COUNTY HOUSE OF CORRECTION, MILWAUKEE
COUNTY SHERIFF'S DEPARTMENT, MILWAUKEE
COUNTY CLERK OF COURT,

    **Defendants.**

# DECISION AND ORDER

On June 1, 2005, Fidelis I. Omegbu ("Omegbu") filed his *pro se* complaint and his Petition and Affidavit for Leave to Proceed in Forma Pauperis (IFP). On June 6, 2005, the Court received Omegbu's Request for Substitution of Judge. The Court, by Order dated July 14, 2005, denied Omegbu's motion for leave to proceed IFP because his supporting affidavit was incomplete. Specifically, Omegbu identified disability payments as a source of income, but failed to list the amount he received therefrom. Similarly, though he identified outstanding legal fees, he did not identify the amount of such debt that he owed. Omegbu also failed to quantify his contributions towards his son's support. The Court informed

Omebgu that his action would be dismissed if he did not submit an amended affidavit or pay the filing fee for his action by August 15, 2005.

On July 25, 2005, the Court received an affidavit from Omegbu further detailing his financial circumstances. The Court considers this affidavit to be an amended application for leave to proceed IFP.

In his amended affidavit, Omegbu identifies a monthly income of $1,126 and monthly expenditures of $1,450. (Total costs or expenses may be $1,550 if one includes a monthly payment of $100 per month for outstanding legal fees, although it is not clear whether Omegbu has made any such payments.) Omegbu calculates his monthly expenditures as follows: $400 for "daughter's academic expenses other than tuition, Boarding & Books," $100 for his son's "High School and Maintenance cost," and $950 for rent, food and travel expenses.

To authorize a litigant to proceed *in forma pauperis*, the Court must make two determinations: (1) whether the litigant is unable to pay the costs of commencing the action; and (2) whether the action warrants dismissal because it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(a)(1) & (e)(2). The Court recognizes that a finding of abject poverty is not required to establish indigence under § 1915. *See Lumbert v. Illinois Dep't of Corr.*, 824 F.2d 257, 260 (7th Cir. 1987). A plaintiff need not forego the necessities of life in order to pay the costs of his litigation. *Id*.

Assessing an IFP motion requires a significant exercise of discretion by the Court. There is no perfect algorithm or calculus that this Court employs when weighing IFP petitions. Typically, the Court relies primarily on the representations of the affiant, often without the benefit of supporting documentation such as bills, credit card statements, or cancelled checks, which might provide insight into a party's finances. The Court relies on the plaintiff to provide sufficient and detailed information from which the Court may reasonably ascertain whether IFP status is warranted. Rarely does an adversary come into litigation and attempt to discredit the complainant's financial representations contained in his IFP petition.

In the present instance, Omegbu has identified costs that exceed his income, which sits on the poverty threshold. Omegbu lists costs of $400 related to his "daughter's academic expenses." Omegbu's daughters–he has two–are 20 and 19 years old. One attends Smith College in Massachusetts and the other Alverno College in Wisconsin. Though it is unclear which daughter is the recipient of the $400, the Court notes that both daughters are over the age of 18 and pursuing college educations. While it is commendable that Omegbu supports his children's academic endeavors, the Court does not view such costs as a necessity of life like food, shelter or medical care. *See Toll v. Moreno*, 458 U.S. 1, 37-38 (1982) ("Although a college education over the years has become accessible to increasing numbers of Americans, it can hardly be characterized as an unavoidable feature of life in this country."); *Memorial Hosp. v. Maricopa County*, 415 U.S. 250, 260 n.15 (1974). However, even when

3

the Court removes this expense from its consideration, Omegbu's income still exceeds his expenses by only approximately $75 per month. Therefore, based on the information before it, the Court finds that Omegbu's financial situation qualifies him for indigent status.

The Court now turns to the second prong of the IFP analysis and inquires whether Omegbu's action warrants dismissal because it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).

Omegbu's complaint is difficult to read at best. A brief summary of the facts provided by Omegbu may prove useful. In 2002, a recall was initiated against the holder of a Milwaukee County public office. That officer ultimately resigned and a special election was organized to fill the vacancy. Omegbu attempted to run for that position but encountered various obstacles–most notably his arrest and conviction for electioneering fraud. Omegbu contends that the handling of the recall and special election procedures were faulty and his prosecution unconstitutional.

The Court, having read and reread Omegbu's complaint, has distilled the following claims. In Count I of his complaint, Omegbu asserts that Wisconsin law requires officials to provide at least 30 days for potential office-seekers to circulate nomination papers. The Defendants, he argues, allowed only six days for circulation. Omegbu also states that he was wrongfully disqualified from the election. Count II of the complaint alleges disparate treatment based on Omegbu's national origin. Specifically, Omegbu contends that his

4

prosecution for felonious election fraud evinces selective prosecution and was motivated by ethnic discrimination. Count III alleges defamation arising out of reports in the media of Omegbu's prosecution for election fraud. Count IV, which is particularly difficult to understand, alleges improper takings of Omegbu's funds and property during his incarceration. Omegbu also seems to claim that he was placed in the wrong detention facility and incarcerated beyond the time mandated by the relevant state court judgment. Remarkably, Count V of the complaint alleges a breach of prospective employment contract based on the Defendants' actions, which thwarted Omegbu's ability to run for the vacant county executive post. In Count VI, Omegbu states that his arrest for a battery as well as the aforementioned election fraud charges have adversely affected his reputation and led to a loss of domicile and employment. Seventh, and finally, Omegbu brings a claim for infliction of emotional distress. The paragraphs supporting this seventh claim ostensibly have no relation to a claim for emotional distress and, frankly, are little more than legal gibberish.

Though it questions the viability of Omebgu's claims, the Court is satisfied that at least one claim in Omegbu's complaint may provide a basis for relief: that the Milwaukee County District Attorney selectively prosecuted him because of his race or ethnicity. This will be enough for Omegbu to proceed with his action. *See Dixon v. Pitchford*, 843 F.2d 268, 270 (7th Cir. 1988) (explaining that § 1915 does not allow courts to proceed on one claim in a suit but not another). The Court, for the time being, withholds judgment on the legitimacy of Omegbu's remaining claims.

5

Omegbu has also brought a motion for substitution of judge. Such requests come under 28 U.S.C. § 144, which states

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144. Omegbu has neither filed an affidavit supporting his request nor proffered any information that might suggest bias against him or favor towards his adversaries on the part of the Court. Therefore, the Court must deny Omegbu's request for substitution of judge.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Omegbu's Amended Petition and Application to Proceed in Forma Pauperis is **GRANTED**.

Omegbu's Request for Substitution of Judge (Docket No. 3) is **DENIED**.

The Clerk of Court **SHALL** file the complaint received on June 1, 2005.

The United States Marshal **SHALL** serve a copy of the complaint in Case No. 05-C-0596, the summons, and this order upon the Defendants pursuant to Federal Rule of Civil Procedure 4.

Omegbu is hereby notified that, from now on, he is required, under Fed. R. Civ. P. Rule 5(a), to send a copy of every paper or document filed with the Court to the Defendants or the Defendants' attorney(s). Omegbu should also retain a personal copy of each document. If he does not have access to a photocopy machine, Omegbu may send out identical handwritten or typed copies of any documents. The Court may disregard any papers or documents which do not indicate that a copy has been sent to each respondent or to the respondent's attorney.

Dated at Milwaukee, Wisconsin this 5th day of August, 2005.

**BY THE COURT**

s/ Rudolph T. Randa
**Hon. Rudolph T. Randa**
**Chief Judge**